UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KEVIN GLOWICKI,

        Plaintiff,

                                                  Case No. 26-cv-0041-bhl

  v.

CITY OF MILWAUKEE, et al,

        Defendants.

## SCREENING ORDER

On January 8, 2026, Plaintiff Kevin Glowicki, proceeding without an attorney, filed this lawsuit against Defendants City of Milwaukee, Milwaukee Police Department, Milwaukee Health Emergency Center, Rogers Behavioral Health, and various unknown Milwaukee Police Department Officers and physicians or clinicians. (ECF No. 1.) Glowicki has also filed a motion for leave to proceed without prepayment of the filing fee or *in forma pauperis* (IFP). (ECF No. 2.) The matter is before the Court for consideration of Glowicki's IFP motion and for the screening of his complaint.

### IFP MOTION

The Court has authority to allow a plaintiff to proceed IFP upon the submission of an affidavit that identifies the plaintiff's assets and allows the Court to find that the plaintiff is unable to pay the filing fee. *Cf.* 28 U.S.C. §1915(a)(1). Glowicki's IFP application includes information about his finances and is signed under penalty of perjury, satisfying the first IFP requirement. *See id.*; (ECF No. 2 at 4). He represents that he is unemployed, is unmarried, and has one dependent. (*Id.* at 1.) He has no salary or monthly expenses, and he appears to be homeless. (*Id.* at 2–3.) Given his allegations, the Court concludes he lacks resources to pay the filing fee and will grant him IFP status.

### SCREENING THE COMPLAINT

The IFP statute also requires the Court to dismiss a case at any time if it determines that the plaintiff's allegations of poverty are "untrue," or if the action is frivolous or malicious, fails to

state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. *Cf.* 28 U.S.C. §1915(e)(2). Accordingly, after evaluating a *pro se* plaintiff's IFP request, the Court may screen the complaint to ensure the case should be allowed to move forward. In screening a *pro se* complaint, the Court applies the liberal pleading standards embraced by the Federal Rules of Civil Procedure. To survive screening, the complaint must comply with the Federal Rules and state at least plausible claims for which relief may be granted. To state a cognizable claim, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). If the complaint fails to allege sufficient facts to state a claim on which relief may be granted, it must be dismissed. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1018 (7th Cir. 2013).

## ALLEGATIONS

Glowicki is an adult Wisconsin resident. (ECF No. 1 at 1.) He alleges that he reported online harassment, intimidation, threats of violence, and privacy-invasion attempts to the Milwaukee Police Department. (*Id.* at 2.) Rather than investigating his claims, the Milwaukee Police Department classified them as "mental health" contacts. (*Id.*) He was then subjected to involuntary commitment under Wis. Stat. §51.15, apparently as a consequence of his complaints.

(*Id.*)  He maintains that during his detention, he was denied access to counsel and records to challenge the basis for his detention.  (*Id.*)

Based on these factual allegations, Glowicki identifies seven causes of action.  Invoking 42 U.S.C. §1983, Glowicki maintains that Defendants retaliated against him in violation of his First Amendment rights and unlawfully seized him and deprived him of his liberty in violation of the Fourth and Fourteenth Amendments.  (ECF No. 1 at 3.)  He also invokes *Monell v. Department of Social Services*, 436 U.S. 658 (1978), to assert claims against the city for these civil rights violations.  (*Id.*)  He further claims that Defendants' conduct violated Title II of the Americans with Disabilities Act (ADA) and the Rehabilitation Act.  (*Id.*)  Finally, he alleges a civil conspiracy in violation of 42 U.S.C. §1985(3).[1]  (*Id.*)

## ANALYSIS

Glowicki invokes 42 U.S.C. §1983 to pursue various alleged constitutional violations against Defendants.  (ECF No. 1 at 3.)  To state claims under Section 1983, Glowicki must identify a person or persons acting under color of law who violated his federal rights.  *Gibson v. City of Chicago*, 910 F.2d 1510, 1519–20 (7th Cir. 1990).  Glowicki maintains that the Milwaukee Police Department, the Milwaukee Health Emergency Center, Rogers Behavioral Center, unknown physicians and clinicians involved in his involuntary confinement, and unknown officers violated his First Amendment and Fourth Amendment rights when he was involuntarily committed.

Of the named defendants, only the unknown officers constitute persons acting under color of law.  The Milwaukee Police Department and Milwaukee Health Emergency Center are not suable "persons" under Section 1983.  *See Best v. City of Portland*, 554 F.3d 698, 698 n.* (7th Cir. 2009) ("[A] police department is not a suable entity under [Section] 1983."); *see also Spencer v. Lee*, 864 F.2d 1376, 1377 (7th Cir. 1989) (en banc) (holding that private facilities do not engage in state action by virtue of participating in a state process for involuntary commitment).  Glowicki's attempt to sue the physicians and clinicians involved in his commitment for constitutional violations fail because they are private actors and thus cannot be held liable under Section 1983. *See Spencer*, 864 F.2d at 1377 (holding that physicians of private facilities do not engage in state action by virtue of participating in a state process for involuntary commitment).

---

[1] Glowicki's last count is labeled "Civil Conspiracy," but he cites Section 1983.  (ECF No. 1 at 3.)  Section 1983 governs civil actions for the deprivation of rights.  It appears that Glowicki intends to invoke Section 1985, which provides a remedy against conspiracies to interfere with civil rights.  Accordingly, the Court will treat this count as raising a claim under Section 1985, not Section 1983.

With respect to Glowicki's claim that the unknown officers retaliated against him for exercising his First Amendment rights, he must allege facts sufficient to establish or infer that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the John Doe Officers' decision to take retaliatory action. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008). While discovery may shed further light on the circumstances, Glowicki has sufficiently alleged facts to support a First Amendment retaliation claim. He alleges that he made police reports, which can be activity protected by the First Amendment. After making his police reports, he claims he was involuntarily committed, presumably as a result of his reports to the police. These factual allegations are sufficient to allow the Court to infer that the officers characterized his reports as "mental health" contacts and then caused him to be committed without a legitimate factual basis. Construed in this way, the officers' actions would likely deter a reasonable person from making future police reports. This is a close call, but the Court concludes that it could also infer that the reports were a motivating factor in his involuntary confinement. Glowicki may therefore pursue his First Amendment retaliation claim against the unknown officers.

Glowicki next asserts that his seizure under Wis. Stat. §51.15 violated the Fourth Amendment. (ECF No. 1 at 3.) The Fourth Amendment applies to mental-health seizures. *Fitzgerald v. Santoro*, 707 F.3d 725, 732 (7th Cir. 2013). Mental-health seizures violate the Fourth Amendment when officers lack probable cause. *Id.* Officers generally have probable cause if they believe that the person seized is a danger to himself or others. *Bruce v. Guernsey*, 777 F.3d 872, 876 (7th Cir. 2015). Glowicki maintains that his detention relied on "police narratives and untested characterizations," without any factual basis to support detention. (ECF No. 1 at 2.) While again a close call, the Court concludes that Glowicki's pleadings are sufficient to allow him to proceed at this stage. Glowicki maintains that no factual basis supported his detention. If this allegation is true, there was no reason to believe he was a danger to himself or others, and the officers therefore lacked probable cause to have him involuntarily committed. Accordingly, Glowicki may pursue his unlawful seizure claim against the unknown officers.

Glowicki's final constitutional claim is based on procedural due process. (ECF No. 1 at 3.) The Seventh Circuit recognizes that a person has a liberty interest in avoiding involuntary confinement, and therefore, involuntary confinement of a person requires proper process. *Wilson*

*v. Formigoni*, 42 F.3d 1060, 1065 (7th Cir. 1994). Glowicki alleges that he was denied access to counsel and records, making him unable to confront the basis of his detention. (*See* ECF No. 1 at 2.) If these allegations are true, then his procedural due process rights were violated. *See* Wis. Stat. §51.15(9) (providing that individuals who are involuntarily confined must be informed of their right to an attorney provided at public expense and must be provided with a copy of the statement of emergency detention). Accordingly, his procedural due process claim against the unknown officers may proceed.

Glowicki also invokes *Monell* to hold the City of Milwaukee liable for the officers' alleged violations of Section 1983. (ECF No. 1 at 3.) In *Monell*, the Supreme Court recognized that municipalities could be "persons" and thus held liable for constitutional violations under Section 1983. 436 U.S. at 690–91. To prevail on a *Monell* claim, the plaintiff must allege facts establishing (1) that he suffered a constitutional injury, and (2) that the City authorized or maintained a custom of approving the unconstitutional conduct. *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) (citing *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994)). As discussed above, Glowicki has alleged various constitutional injuries. But he has not alleged that any violation of his rights occurred as a result of a policy, practice, or procedure. *See Helbacs Café, LLC v. City of Madison*, 46 F.4th 525, 530 (7th Cir. 2022). This claim will therefore be dismissed.

Glowicki also brings claims under Title II of the ADA and the Rehabilitation Act. (ECF No. 1 at 3.) But to proceed with either claim, Glowicki must first allege that he is a qualified individual with a disability. *See Lacy v. Cook Cnty.*, 897 F.3d 847, 853 (7th Cir. 2018) (setting forth the elements of a Title II ADA discrimination claim); *see also King v. Hendricks Cnty. Comm'rs*, 954 F.3d 981, 988 (7th Cir. 2020) (explaining that discrimination claims under the Rehabilitation Act are treated as "functionally identical" to ADA discrimination claims). Nowhere in Glowicki's complaint does he allege to have a disability, thus defeating his claims under the ADA and the Rehabilitation Act.

Glowicki's final claim is one for civil conspiracy under 42 U.S.C. §1985(3). (*See* ECF No. 1 at 3.) Section 1985(3) provides a remedy when "two or more persons in any state or Territory conspire . . . for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws." To state a claim under this provision, Glowicki must allege (1) the existence of a conspiracy; (2) a purpose of depriving him of equal protection of the laws; (3) an act in furtherance of the alleged conspiracy; and (4) an injury to him or property or a

deprivation of a right or privilege granted to U.S. citizens. *Majeske v. Fraternal Ord. of Police, Loc. Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996). Additionally, Glowicki must plead that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 827 (7th Cir. 2022) (citations omitted). Class-based discriminatory animus includes discrimination based on sex, religion, ethnicity, and political loyalty. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1024 (7th Cir. 2000) (citations omitted). Glowicki's Section 1985(3) claim fails because he has not alleged fact supporting the contention that any conspiracy was motivated by his race, sex, religion, ethnicity, or political loyalty. From his complaint, the Court infers that any alleged conspiracy was motivated by Glowicki's repeated police reports. That, however, is not class-based discrimination as defined by the Seventh Circuit and as necessary to support a Section 1985(3) claim. Accordingly, Glowicki's civil conspiracy claim will be dismissed.

Because Glowicki does not know the names of the defendants he is suing, the Court will add Police Chief Jeffrey B. Norman as a defendant for the limited purpose of helping Glowicki identify the names of Defendants. *See Donald v. Cook Cnty. Sheriff's Dept.*, 95 F.3d 548, 556 (7th Cir. 1996). The court will order the Marshals to serve Norman with Glowicki's complaint and a copy of this order. Norman does not have to respond to the complaint. After Norman's lawyer files an appearance in this case, Glowicki may serve discovery upon Norman (by mailing it to his attorney at the address in his notice of appearance) to get information that will help him identify the names of the defendants. For example, Glowicki may serve interrogatories (written questions) under Fed. R. Civ. P. 33 or document requests under Fed. R. Civ. P. 34. Because Glowicki does not state a claim against Norman, his discovery requests must be limited to information or documents that will help him learn the real names of the defendants he is suing. Glowicki may not ask Norman about any other topic, and Norman is under no obligation to respond to requests about any other topic.

After Glowicki learns the names of the people who he alleges violated his constitutional rights, he must file a motion to substitute their names for the John Doe placeholders. The court will dismiss Norman as a defendant once Glowicki identifies the John Doe Defendants' names. After the John Doe Defendants have an opportunity to respond to Glowicki's complaint, the Court will set a deadline for discovery. At that point, Glowicki may use discovery to get the information he believes he needs to prove his claims.

Glowicki must identify the names of the John Doe Defendants within **sixty (60) days** of Norman's attorney appearing. If Glowicki does not identify the defendants or does not explain to the Court why he is unable to do so, the Court may dismiss his case based on his failure to diligently prosecute it. *See* Civil L. R. 41(c).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Glowicki's Motion for Leave to Proceed Without Prepayment of the Filing Fee, ECF No. 2, is **GRANTED**.

**IT IS FURTHER ORDERED** that Glowicki's complaint, ECF No. 1, is **DISMISSED in part**. Defendants City of Milwaukee, Milwaukee Police Department, Milwaukee Health Emergency Center, Rogers Behavioral Health, and John Doe Physicians & Clinicians are **DISMISSED**. Counts IV–VII (liability under *Monell*; Title II of the ADA; the Rehabilitation Act; and 42 U.S.C. §1985(3)) are **DISMISSED**.

**IT IS FURTHER ORDERED** that the United States Marshal must serve a copy of the complaint and this Order on Police Chief Jeffrey B. Norman under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the Court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals will give Glowicki information on how to remit payment. The Court is not involved in collection of the fee.

**IT IS FURTHER ORDERED** that Norman does not have to respond to Glowicki's complaint; however, he must respond to Glowicki's discovery requests as described in this order.

**IT IS FURTHER ORDERED** that Glowicki identify the real names of the John Doe Defendants within **sixty (60) days** of Norman appearing in the case. If Glowicki does not, or does not explain to the Court why he is unable to identify their real names, the Court may dismiss his case based on his failure to diligently prosecute it. *See* Civil L.R. 41(c).

Dated at Milwaukee, Wisconsin on January 28, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge